**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

OLUWAROTIMI ODUTOLA
4908 GEORGIA AVE, NW
WASHINGTON, DC 20011

*Plaintiff*

*vs.*

CIVIL ACTION NO. 17-0007250

BB&T, BRANCH BANKING
317 PENNSYLVANIA AVE, SE
WASHINGTON, DC 20003

*Defendants*

FILED
CIVIL ACTIONS BRANCH
DEC 22 2017
Superior Court
of the District of Columbia
Washington, DC.

**COMPLAINT**

**1. Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**

SEE ATTACHED

**Wherefore, Plaintiff demands judgment against Defendant in the sum of $** 4,300,000 **with interest and costs.**

(804)933 8203
**Phone:**

**DISTRICT OF COLUMBIA, SS**

OLUWAROTIMI ODUTOLA **, being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the paintiff, exclusive of all set-off and just grounds of defense.**

[signature]
**(Plaintiff Agent)**

**Subscribed and sworn to before me this** 22 **day of** DECEMBER **20** 17.

DC ID EXP. 3/18/24

Kanisha Cox
Deputy Clerk
**(Notary Public/Deputy Clerk)**

**FORM CV-1013/ Nov. 00**

2017 CA 007250 B
3700330
CIVAC

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

OLUWAROTIMI ODUTOLA
4908 GEORGIA AVE. NW
WASHINGTON, DC 20011

***Plaintiff***

***vs.***

CIVIL ACTION NO. 17-0007250

BB&T, BRANCH BANKING
317 PENNSYLVANIA AVE. SE
WASHINGTON, DC 20003

***Defendants***

RECEIVED
Civil Clerk's Office
DEC 22 2017
Superior Court of the
District of Columbia
Washington, D.C.

**COMPLAINT**

**1. Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**

SEE ATTACHED

**Wherefore, Plaintiff demands judgment against Defendant in the sum of $** 4,300,000 **with interest and costs.**

(804) 933 8203
**Phone:**

**DISTRICT OF COLUMBIA, SS**

OLUWAROTIMI ODUTOLA, **being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the paintiff, exclusive of all set-off and just grounds of defense.**

[signature]
**(Plaintiff Agent)**

**Subscribed and sworn to before me this** 22 **day of** DECEMBER **20** 17.

DC ID EXP. 3/11/24

Kanisha Cox
Deputy Clerk
**(Notary Public/Deputy Clerk)**

**FORM CV-1013/ Nov. 00**

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
# CIVIL DIVISION

Oluwafemi Odutola
4908 Georgia Ave. NW
Washington, DC 20011

*Plaintiff*

*vs.*

CIVIL ACTION NO. 17-0007250

BB&T Branch Banking
310 Pennsylvania Ave SE
Washington, DC 20003

*Defendants*

RECEIVED
Civil Clerk's Office
DEC 22 2017
Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT

**1. Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**

See attached

**Wherefore, Plaintiff demands judgment against Defendant in the sum of $** 4,300,000 **with interest and costs.**

(801) 933 8203
**Phone:**

**DISTRICT OF COLUMBIA, SS**

Oluwafemi Odutola, **being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the paintiff, exclusive of all set-off and just grounds of defense.**

[signature]
**(Plaintiff Agent)**

**Subscribed and sworn to before me this** 22 **day of** December **20** 17.

Kanisha Cox
Deputy Clerk

**(Notary Public/Deputy Clerk)**

**FORM CV-1013/ Nov. 00**

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

X OLUWAROTIMI ODUTOLA
Plaintiff

vs.

Case Number 17-0007250

BB&T
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

X OLUWAROTIMI ODUTOLA
Name of Plaintiff's Attorney

4908 GEORGIA AVE NW
Address
WASHINGTON, DC
20011 (804) 933 8203
Telephone

*Clerk of the Court*

By ______________________
Deputy Clerk

Date 10/22/2017

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

______________________________
Demandante

contra

Número de Caso: ______________________

______________________________
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

*SECRETARIO DEL TRIBUNAL*

______________________________
Nombre del abogado del Demandante

______________________________
Dirección

Por: ______________________________
Subsecretario

______________________________

______________________________
Teléfono

Fecha ______________________________

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedirayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original



New Version
Amended
12/22/17

1. Oluwarotimi Odutola,

   i. Plaintiff

      1. Vs

2. BB&T, Bank,

      1. Defendant

i. Oluwarotimi Odutola
ii. 4908 Georgia Ave NW
iii. Washington, DC
iv. 20011
v. (804) 933 8203
Timodutola@gmail.com

3.

4. COMPLAINT

5. Plaintiff Oluwarotimi Odutola brings forth the following causes of action and alleges the following:

6. Plaintiff was an employee and Personal Banker at BB&T at the time of the incident at the Capitol Hill Branch located at 317 Pennsylvania Ave, SE, Washington, DC 20003 from October 17, 2015 to November 22, 2016.
7. Defendant Keeya Briscoe was a BB&T employee and branch manager at the time of this incident at the Capitol Hill Branch located at 317 Pennsylvania Ave, SE, Washington, DC 20003.
8. Defendant Terrance Bayly was a BB&T employee and Human Resource manager at the time of this incident in Maryland central offices.
9. On Tuesday October 11, 2016 the Defendant, tried to manipulate the Plaintiff through email and phone conversations into leaving the Metro center branch with only one employee who was a teller at the Metro Center branch and return back to the Capitol Hill branch, which is clearly a direct violation of BB&T corporate nationwide policy and procedures.
10. As the nationwide policy clearly states that there should always be a mandatory of two employees present in the branch at all times no exceptions.
11. The Defendant, was fully aware that there were only the Plaintiff and other teller in the branch at Metro center at that present moment, however the Defendant still insisted and demanded that the Plaintiff leave the Metro center branch regardless and disregard corporate policy.
12. The Plaintiff communicated his concerns through email to the Defendant, as to why he could not leave the branch and teller by herself for safety reasons and the implications that would arise if the Plaintiff left.

13. On Wednesday October 12, 2016 at 10:00am the next day the Plaintiff and Defendant, were having a one on one meeting in the Defendants office to discuss the concerns and issues from the previous day.

14. During the one on one meeting the Defendant, heavily scrutinized the Plaintiff for not leaving Metro Center and made several discriminatory comments regarding the Plaintiffs sex, national origin, and marriage status.

15. During the meeting the Defendant, made several discriminatory and bias comments as to why the Plaintiff was not promoted and instead why the Plaintiffs female coworker was promoted instead of the Plaintiff, regardless the fact that the Plaintiff was the top performer and producer in the branch and clearly outperformed his coworker two consecutive quarters in a row.

16. After several hours of discussion between the Defendant and the Plaintiff, the Defendant continued to make inappropriate remarks and comments to the Plaintiff.

17. The comments and remarks were so egregious that the Plaintiff did not feel comfortable speaking with the Defendant by himself due to the display of unethical behavior and morals the Defendant, was exhibiting.

18. Due to the unprofessional and discriminatory behavior that the Defendant exhibited to the Plaintiff in the Defendants office, the Plaintiff requested that his coworker Wakettia sit in as a witness to witness the unethical and bias dialogue of the Defendant.

19. The Defendant made a direct threat that was highly offensive to the Plaintiff at the end of the conversation in front of the witness that immediately in sighted fear and intimidation in the Plaintiff.

20. The threat left the Plaintiff perplexed and under the impression that something bad was about to happen to him based on the demeanor and tone of the Defendant towards the Plaintiff when the Defendant made the threat.

21. On Thursday October 13, 2016 the Defendant unusually did not speak to the Plaintiff during the whole course of the day and secluded herself locked away in the Defendants office all day.

22. This behavior was completely unusual and unsettling for the Plaintiff considering the threat the Defendant made the day before.

23. On Friday October 14, 2016 at 11:12am was the first time the Defendant spoke to the Plaintiff since Wednesday October 12, and the Defendant asked the Plaintiff to leave his office and go behind the teller line to assist with teller transactions.

24. On Friday October 14, 2016 at 11:15am a very suspicious African American male non-client suspect came directly to the Plaintiffs window to cash a fraudulent check for $695. The suspect handed the Plaintiff an altered stolen check with no signature of endorsement on it.

25. The Plaintiff immediately knew that something was not right based on the texture, wording on the check and that there was no signature of endorsement present on the check from the maker.

26. The Plaintiff followed all compliance guidelines for negotiating checks for non-clients over $500 and began to perform the verification process to protect the bank against any risk and exposure for a potential loss.

27. The Plaintiff then asked the suspect his name in order to see if it matched his ID and also for the name and phone number of the maker of the check.

28. The suspect replied that his name was POPS and he didn't know the maker of the check or their phone number.

29. The Plaintiff informed the suspect that as part of our policy at BB&T we are going to have to call and verify the maker of the check because of the amount of the check to negotiate the check.

30. The suspect replied that he did not know the phone number or maker of the check.

31. The Plaintiff then replied that he would not be able to negotiate the check at this time until that information is provided Mr. Pops.

32. Suddenly the suspect immediately became extremely enraged and irate and began to shout a series of threatening, offensive and explicit comments directed to the Plaintiff.

33. Due to the inconsistencies with the check along with the suspects suspicious behavior and the severity of the offensive language the suspect displayed, the Plaintiff instructed the suspect that he was not going to be able to negotiate the check at this time and that the Plaintiff was going to get his manager the Defendant, to have him leave the premise.

34. The suspect then continued to use more explicit language directed towards the Plaintiff and refused to leave.

35. The suspect then made felony threats pertaining to the ending the Plaintiffs life.

36. The Plaintiff was scared wondered why the Defendant did not come out of the office to immediately mediate or eradicate the situation since it happened directly in front of her office while the Defendants door was open less than 3ft away.

37. It is virtually impossible for the Defendant not to hear the loud and explicit language from the suspect and the offensive language of the suspect.

38. The Plaintiff was fearful for his life and the other coworker's safety and needed to immediately report the perpetrators fraudulent stolen check to Defendant and also address the suspect's threat to the Defendant.

39. When the Plaintiff came around the teller line window to get to the Defendants office the Plaintiff was aggressively approached by the suspect and another coworker Wakettia who tried to calm the irate suspect down and mediate the situation because she heard the suspect yelling offensive words in the lobby and causing a major disturbance in the bank.

40. The coworker was sitting in her office with her door closed about 20ft away which is two office doors down from where the suspect was standing.

41. The Plaintiff was trying to get to the Defendants office but the suspect was blocking the path to the Defendants office and becoming more and more aggressive and confrontational.

42. The coworker Wakettia threw herself in front of the suspect in to attempt to keep him from physically assaulting and harming the Plaintiff as the suspect said he would.

43. Due to the nature and severity of the situation the coworker Wakettia miraculously took the suspects fraudulent stolen check and ID in order to gather pertinent information for the Defendant to provide to BB&T authorities and to call the Police and report the suspect's felony threats and stolen fraudulent check to the proper channels to prevent the suspect from causing further problems.

44. The Plaintiff told the suspect to leave and go outside in an attempt to deescalate the situation and protect himself and coworkers.

45. The Defendant, finally came out of her office at the last moment and took the ID and fraudulent stolen check from Wakettia and gave it right back to the suspect and instructed the suspect that we were still going to need to verify the check.

46. The suspect took the check and ID back and left out the front door.

47. After the ordeal the Plaintiff asked the Defendant for the suspect's information so that the Defendant could notify local Police to report the felony threats made to him and the Plaintiff can complete a SIR and notify the proper BB&T authority channels and other BB&T branches in Washington, DC about the suspect to prevent him from attempting to cash the check at another BB&T branch location and displaying the same violent aggressive behavior exhibited at Capitol Hill branch if the suspect was not able to cash the check.

48. The Plaintiff was very fearful for his life and safety and was upset that the Defendant did not follow BB&T corporate protocol by properly mediating the situation and getting all the suspects information considering the fact that the Plaintiffs coworker Wakettia had struggled to get the check and ID during the altercation in the heat of the moment for the sole purpose of the Defendant to be able to do her due diligence and follow protocol for a hostile work/ workplace violence situations as stated in EXCELLENCE Associate Handbook for BB&T Policies and Procedure [pg. 15-16 ] and fraudulent situations.

49. The Plaintiff meet with the Defendant in the Defendants office to report the threats by the suspect and report the fraudulent check and discuss the handling of the incident by the Defendnat.

50. The Plaintiff also wanted to figure out why the Defendant never intervened during the whole ordeal and allowed it to transpire without taking the necessary precautions during the incident as stated in the EXCELLENCE Associate Handbook Policies and Procedures for Hostile Behavior [pg. 16] *where the individual refuses to cease his/her behavior and/or leave the premises, the manager contacts either on-site security staff or the local law enforcement group, and the Regional Associate Relations Manager.*

51. Not to mention the suspect tried to cash a stolen fraudulent check that was taken by a coworker and handed to the Defendant to document and follow bank fraud procedures and protocol.

52. In the meeting the Plaintiff realized that the Defendant, was behaving very suspicious and doubtful when the Plaintiff began to question the Defendant about the incident and why the Defendant did not follow bank policies and protocol.

53. After the Plaintiff asked the Defendant a series of questions pertaining to the incident and why the Defendant did not take certain measures during and after the incident, the Defendant started behaving very suspicious and culpable.

54. The Plaintiff immediately knew something was not right.

55. The Plaintiff mentioned during the conversation with the Defendant that he was going to report the incident involving the suspect and the Defendant, to the EEOC for the discriminatory comments made on October 12, 2016 and OSHA for endangering the lives of other employees and the Plaintiffs life during and after the incident and also report the incident involving the suspect to the Corporate Investigator and have the Corporate Investigator investigate the Defendant, for conspiracy against the Plaintiff.

56. The Plaintiff was going to fill out a SIR and call Human Resources to file a grievance report on the handling and negligence of the Defendant during and after the incident.

57. The Defendant immediately got enraged and irate and made several discriminatory comments regarding the Plaintiffs sex, national origin and would not allow the Plaintiff to contact any corporate personnel or fill out a SIR as stated in the EXCELLENCE Associate Handbook Policies and Procedures [pg.16].

58. Neither did the Defendant allow the Plaintiff to exercise his civil legal rights by calling 911 or filing a civil complaint.

59. The Defendant started threatening the Plaintiff that she would terminate his employment immediately and categorize it as insubordination and therefore permanently negatively affect his banking and financial career forever if the Plaintiff spoke out about the incident to anyone.

60. The Defendant repeatedly threatened the Plaintiff that if he called OSHA, 911 or reported the incident through BB&T channels that he would be reprimanded and terminated for insubordination and that the Defendant already coerced with other employees to get the Plaintiff fired if she needs and wants to and that the Defendants, manager Bernita Bailey will back her anyways because this is a good ol boy club and the Defendant is in the club.

61. The Plaintiff then asked the Defendant if he could leave work early because he did not feel safe at work because the suspect said he was coming back to the bank when he got off work and could easily cause bodily harm to him or any of the other employees considering that none of the proper protocols were done to prevent such actions from taking place or reoccurring.

62. The Plaintiff also mentioned that he takes public transportation which will put the Plaintiff at an even higher risk especially because it gets dark at night this time of the year when the Plaintiff gets off of work.

63. The Plaintiff also mentioned that Southeast, DC is notoriously known for having a high crime rate and especially violent crimes.

64. There was a clear lack of empathy and concern by the Defendant for the Plaintiffs life and safety.

65. The Plaintiff stated that he felt the Defendant allowed the situation to transpire and that the Defendant had something to do with it based on the Defendants distrustful behavior and lack of empathy and urgency and reaction to the situation.

66. Also, the minatory threat the Defendant made on Wednesday October 12, 2016 to the Plaintiff in front of the coworker Wakettia at the end of their discussion confirmed that this incident was not by coincidence by any means but set up by the Defendant.

67. The Plaintiff was at a loss of words, devastated and fearful for his life from the situation and chain of events that happened leading up to and after the incident with the Defendant, and suspect.

68. The Plaintiff out of desperation and fear felt compelled to request his coworker Wakettia for a second time to come and sit in the office to witness the egregious discussion the Defendant, was having with the Plaintiff and observe the Defendants unusual behavior.

69. The Defendant, denied the Plaintiff the right to leave work early despite the Plaintiff fearing for his life the remainder of the work day and complaining about not wanting to be in an unsafe work environment.

70. The following Monday October 17, 2016 the Plaintiff continued to fear for his safety and life after the Plaintiff realized that nothing had been done regarding the incident on Friday October 14, 2016 to protect the Plaintiff, so the Plaintiff immediately and frantically called HR at 3:15pm to file a formal grievance report against the Defendant, and to report the discrimination instance that took place on Wednesday October 12, 2016 and Friday October 14, 2016.

71. The Plaintiff followed the proper channels in accordance with BB&T 2016 Policies and Procedures by contacting the Human Resource representative for Greater Washington,

DC Defendant, to report the discrimination and file a grievance report and discuss what possible safety precautionary steps that could be taken since the Plaintiff did not feel safe at the Capitol Hill branch in response to what happened Friday October 14, 2017 and working around the Defendant.

72. The Defendant, willingly and openly refused to document and file the Plaintiffs grievance report and refused to document and file the Plaintiffs discrimination claims.

73. The Defendant, made several demeaning and unethical remarks to the Plaintiff when the Plaintiff asked him to repeatedly document and investigate the discrimination claims against the Defendant and also to file and document a formal grievance report against the Defendant.

74. The Defendant, refused to document, offer advice or provide any guidance regarding safety precautionary steps that could have be taken to protect the Plaintiffs life at work.

75. Finally out of frustration the Plaintiff requested that Defendant, provide his managers name, phone number and email address since Terrance was uncooperative and behaving openly facetious and unethical.

76. The Plaintiff was even more scared at this point and distrusted BB&T as a whole completely and felt he was purposely set up by the Defendant.

77. The Plaintiff got off of the phone with the Defendant, at or around 4:00pm and fearing for his life and needing to report the crime by the suspect on Friday and also report the Defendant and BB&T to the Police the Plaintiff called 911.

78. Officer Di Bartillo arrived on the scene at 4:15pm.

79. The Plaintiff explained to the responding officer Di Bartilo about the incident that took place Friday October 14, 2016 regarding the suspect that threatened to end his life and the Defendant.

80. The officer and the Plaintiff then immediately proceeded to head back to the Capitol Hill Branch to speak to the Defendant, to get video footage of the crime and the suspects face since there was no information on the suspect and question the Defendant as to why the Police were never called.

81. The Defendant, was hesitant and reluctant to comply with providing the officer the video.

82. The Defendant, then said that she wanted to tell her side of the story.

83. The Defendant, Officer Di Bartillo and the Plaintiff walked downstairs in the front entrance lobby to hear the Defendants perceived story.

84. The Defendant, in her statement communicated in front of the Officer Di Bartillo and the Plaintiff that she heard the suspect say he was going to end the Plaintiff life on two separate occasions.

85. Immediately after the Defendant, spoke with the Officer Di Bartilo, the Defendant calls the Human Resource Representative Defendant, at 5:00pm.

86. The Plaintiff is placed on Administrative leave immediately at 5:05pm by the Defendant.

87. The Plaintiff contacted Defendant, several times after but was unsuccessful at accomplishing anything with the Defendant who continue to not document and file the Plaintiffs grievance report and investigate the discrimination claims.

88. The Plaintiff called the EEOC on October 19, 2016 and filed a claim for discrimination and retaliation.

89. On October 21, 2016 after still being unable to file a formal grievance report or file the discrimination claims with BB&T against the Defendant and the suspect.

90. The Plaintiff reached out to the Defendants, manager Lisa Seabolt the Group Associate Relations Manager to report Defendant, for not documenting the Plaintiffs formal grievance report and claims of discrimination when the Plaintiff originally called on Monday October 17, 2016 at 3:15pm.
91. On October 25, 2016 the Plaintiff contacted Paul Barnes who is Lisa Seabolt boss and got no reply from Mr. Barnes, due to Mrs. Seabolt not following back with the Plaintiff.
92. On November 14, 2016 the Plaintiff contacted Tim Davis the EVP & Chief Ethics Officer to report his claims of discrimination against Defendant and Defendant and file a formal grievance report that still has not be documented.
93. On November 17, 2016 finally, the Plaintiff formally communicated some of the discrimination claims and negligence claims against the Defendant, to Lisa Seaborn.
94. On November 22, 2016 the Plaintiff was terminated by BB&T and his investigation and the Plaintiffs claims were never fully investigated to its entirety.
95. COMPLAINT – 1
96. COUNT- 1 – NEGLIGENCE
97. Oluwarotimi Odutola, and complaining of the Defendant, KEEYA BRISCOE, respectfully states as follows:
98.
99. On Friday October 14, 2016 after the suspect made felony threats to end the Plaintiffs life and left the Capitol Hill Branch at 11:40am. The Defendant, owed the duty of commitment to the Plaintiff to follow and adhere to the policies and procedures as stated in the **EXCELLENCE Associate Handbook BB&T 2016 Policies and Procedures Handbook for Workplace Violence [pg. 15-16]** whereas it states that the Defendant should contact an onsite security officer and if there is not one present then to call the local 911 authorities to report the incident.
100. Defendant, according to **EXCELLENCE Associates Handbook BB&T Policies and Procedures for Managers Commitment and Personal Responsibility and Values We Cherish for Character [pg. 21, pg. 11 pg 5]**] as stated to treat each associate as an individua with dignity and respect, as stated for Courtesy and Cooperation pg 11
101. Defendant, according to **The Basics [pg 11] Policies and Procedures** Defendant, owed the duty of commitment according to **EXCELLENCE Associates Handbook BB&T 2016 Code of Ethics for Associates [pg. 7, Policies and Procedures]** states that BB&T was built on its strong values and high ethical standards. Our continued success depends upon each associate pledge to uphold the BB&T Code of Ethics.
102.
103. The defendant breached that duty of care by:
104. Failing to obey BB&T bank protocol by calling 911 authorities to report the felony threats by the suspect after later acknowledging on October 17, 2016 to the Police Officer Di Bartillo that the Defendant heard the suspect making the threats to the Plaintiff to end his life.
105. Failing to comply with BB&T protocol by collecting and documenting the information given to the Defendant by a coworker of the suspect's Driver License and fraudulent stolen check for later legal purposes and documentation for bank fraud prevention awareness precautionary steps for all employees and branches to be aware of the suspect.

106.         Failure to exercise rational sound business judgment and responsibility in addressing and deescalating the incident involving the suspect based on proximity and cognitive awareness of the incident.

107.         Failure to act proactively to ensure the safety of all branch employees, customers and Plaintiff in lieu of the situation by taking precautionary bank measures to ban or deter the suspect from returning to Capitol Hill branch or any BB&T branches furthermore.

108.         Failure to uphold and exercise BB&T core values and morals by acting in an honest, forthcoming and ethical manner when dealing with the incident involving the suspect and the Plaintiff.

109.

110.         The Defendants breach in duty in fact resulted in the Plaintiff's injuries emotionally, physically, financially and psychologically by the result of the Plaintiff losing his job:

111.         The Plaintiff suffers random panic attacks from the ordeal resulting from the fear of the suspect threatening to end his life and nothing being done to protect the Plaintiff going forward.

112.         The Plaintiff experienced deep depression and abandonment directly resulting from the egregious treatment by the Defendant, in handling the situation and the treatment of the Human Resource representative considering the agony the Plaintiff experienced during and after the incident.

113.         The Plaintiff was the top performer as a Personal Banker the Capitol Hill branch and loved his job dearly and was looking forward to upward mobility at BB&T until and it was suddenly taken away from the Plaintiff unjustly.

114.         The Plaintiff was financially castrated and homeless caused by the sudden loss of employment and reduction of income resulting from the unfair termination leaving the Plaintiff unable to pay his living expenses and bills.

115.         Plaintiff encompassed judgments, lawsuits by landlords against him and account freezing due to financial hardships as a direct result of the unjust termination and unemployment.

116.         Plaintiff's credit was negatively impacted by the debt burden that was not able to be fulfilled due to the decrease in income.

117.         The Plaintiff was referred by the BB&T EAP counselor for outpatient psychological on-going treatment as a result from the emotional torture and psychological burden stemming directly from the treatment and trauma from the BB&T ordeal.

118.         Plaintiff suffered multiple stress attacks that resulted in frequent visits to the hospital for chest pains and esophageal spams directly related to stress and panic attacks resulting from the BB&T ordeal.

119.         The Plaintiff has developed sleep apnea from the stress due to emotional imbalance and trauma experienced from the incident on October 14, 2016 until present.

120.         Plaintiff experienced recent loss of future job opportunities based on BB&T references from Northrop Grumman when the Plaintiff applied in August 10, 2017.

121.         Plaintiff experienced a serious degrade of personal relationships with significant others due to emotional turmoil and financial burden.

122.         The Defendants actions were the proximate cause of this injury by:

123.         The Defendants purposeful and intentional negligence in following BB&T corporate policies as stated in the **EXCELLENCE Associates Handbook BB&T 2016 Policies and Procedures Handbook** for reporting workplace violence and unsafe work environments as an attempt to cover up the Defendant, negligence.

124.         The Defendants unethical and lack of moral responsibility to protect and treat the Plaintiff as a valued employee was a direct cause of the injuries.

125.         WHEREFORE, the Plaintiff prays that a Judgement be entered against the Defendant in excess of $250,000.


126.         Oluwarotimi Odutola, and complaining of the Defendant, TERRANCE BAYLY, respectfully states as follows:

127.         Defendant, owed the duty of commitment according to **EXCELLENCE Associates Handbook BB&T Policies and Procedures for Managers Commitment and Personal Responsibility and Values We Cherish for Character [pg. 21, pg. 11 pg 5]]** as stated to treat each associate as an individua with dignity and respect, as stated for Courtesy and Cooperation pg 11

128.         Defendant, owed the duty of commitment according to **The Basics [pg 11] Policies and Procedures**

129.         Defendant owed the duty of commitment according to **EXCELLENCE Associates Handbook BB&T 2016 Code of Ethics for Associates [pg. 7, Policies and Procedures]** states that BB&T was built on its strong values and high ethical standards. Our continued success depends upon each associate pledge to uphold the BB&T Code of Ethics.

130.         **EXCELLENCE Associates Handbook Policies and Procedures Handbook for Reporting Incidences of Harassment and Discrimination and Investigations [pg.7]** and **BB&T 2016 Commitment to a Productive Work Environment [pg7]** all states that when an employee has an incident that involves his/her manager the issue should be escalated to the Regional Human Resource Manager in your area.

131.         The Defendant breached the duty of care by:

132.         Failing to obey BB&T corporate Human Resources policies and procedures

133.         Failing to document the Plaintiff claims of discrimination that was discussed with the Defendant, on the phone on October 17, 2016 at 3:15pm to 3:45pm

134.         Failing to document and file the Plaintiffs formal grievance report against the Defendant.

135.         Failing to uphold BB&T core value ethics and morals as stated in the BB&T 2016 Handbook.

136.         Failing to provide a safe workplace for the Plaintiff after the incident with the suspect considering the Plaintiff was scared for his life.

137.

138.         The Defendants breach in duty in fact resulted in the Plaintiff's injuries emotionally, physically, financially and psychologically by the result of the Plaintiff losing his job:

139.         Plaintiff suffers from severe depression resulting and negative emotions towards companies' management and employee value.

140.         Plaintiffs suffers from distrust of anyone and management.

141.        The Plaintiff suffers random panic attacks from the ordeal resulting from the fear of the suspect threatening to end his life and nothing being done to protect the Plaintiff going forward to this day.

142.        The Plaintiff experienced extreme deep depression and abandonment directly resulting from the egregious treatment by the Defendant in handling the situation and the treatment of the Human Resource department.

143.        Plaintiff suffered multiple stress attacks that resulted in frequent visits to the hospital for chest pains and esophageal spams directly related to stress and panic attacks resulting from the BB&T ordeal.

144.        The Plaintiff has developed sleep apnea from the stress and emotional imbalance from the incident on October 14, 2016 until present.

145.        The emotional mode swings and experiencing of highs and lows or negative emotions and thoughts.

        Plaintiff's loss in self-identity and pride.

146.

147.        The Defendants actions were the proximate cause of this injury by:

148.        The Defendants purposeful and intentional negligence in following BB&T corporate policies as stated in the **EXCELLENCE Associates Handbook BB&T 2016 Policies and Procedures Handbook** for reporting **Workplace Violence** and **BB&T 2016 Policies and Procedures Handbook for Reporting Incidences of Harassment and Discrimination and Investigations [pg.7]** and **EXCELLENCE Associates Handbook BB&T 2016 Commitment to a Productive Work Environment [pg7]**

149.        The Defendants unethical and lack of moral responsibility to protect and treat the Plaintiff as a valued employee was a direct cause of the injuries.

150.        **WHEREFORE**, the Plaintiff prays that a Judgement be entered against the Defendant in excess of $500,000.

151.

152.

153.                        COUNT-2- HOSTILE WORK ENVIRONMENT

154.        The Plaintiffs hostile work environment claims stemmed from a serious of related events that led up to the Plaintiffs termination as stated in the above paragraphs above.

155.        On October 11, 2016 the Defendant, had tried to purposely manipulate and intimidate the Plaintiff into violating a nationwide policy by using fear and skillful tactics to persuade the Plaintiff into doing so. The Plaintiff refused to violate the policy because that was an automatic termination.

156.        On October 12, 2016 the Defendant had a discussion with the Plaintiff regarding staffing policies and procedures issues from the previous day. The Defendant was upset that the Plaintiff did not violate the staffing guidelines in order to obey the Defendant.

157.        In response the Defendant began to make direct threats pertaining to why the Plaintiff did not get the job promotion and his female coworker did.

158.        The Defendant began to make discriminatory comments regarding the Plaintiffs national origin Nigeria. The Defendant made bias comments regarding the Plaintiff sex and marital status.

159.    The meeting was so hostile that the Plaintiff had requested that a coworker
Wakettia come sit in on the meeting to witness the Defendant. The Defendant made a
very severe threatening comment at the end of the meeting in front of the coworker that
made the Plaintiff fear for his life and job safety causing the Plaintiff to not feel safe at
work or around the Defendant, anymore.

160.    The Plaintiff was so worried by the comment that the Plaintiff could no longer
focus on his clients because the Plaintiff was to worried about his personal safety.

161.    The Plaintiff knew that something bad was about to happen.

162.    On October 14, 2016 two days after the Defendant, made the threat to the
Plaintiff a suspect came in the bank and made threats to end the Plaintiffs life and the
Defendant refused to do anything about the incident.

163.    The Defendant intimidated and made threats to the Plaintiff demanding that
the Plaintiff not report the incident to the proper BB&T channels or Defendants manager,
file a SIR and call Human Resources to file a grievance report against the Defendant.

164.    The Defendant began to make a series of unwanted discriminatory and
offensive comments regarding the Plaintiffs national origin, sex as a way to justify why
the Plaintiff could not report the incident.

165.    The Defendant used fear, intimidation and tried to blackmailed the Plaintiff to
not mention the incident to anyone or the Plaintiff will be terminated for in subornation
and never work in banking again.

166.    The Plaintiff was so scared and perplexed and realized the Defendant had
something to do with the incident that happened on October 14, 2016 involving the
suspect.

167.    The Plaintiff was so intimidated and scared for his safety and life that the
Plaintiff did not feel comfortable being alone with the Plaintiff in the Defendant, office
and asked the coworker Wakettia to sit in on the conversation again for the second time
between the Plaintiff and the Defendant after the incident happened on October 14, 2016
at 1pm.

168.    The Plaintiff was so much in fear that he requested to leave work early
because the Plaintiff felt the Defendants comment the other day was a forewarning of
why the incident happened on October 14, 2016 and felt the only way to save his life is to
leave work.

169.    The Defendant denied the Plaintiff the right to leave work and forced the
Plaintiff to stay and used fear and intimidation to do so.

170.    Finally on October 17, 2016 the Plaintiff was so fearful and traumatized by
the Defendant and the suspect that the Plaintiff had no other choice but to call the Human
Resources officer Defendant, to report and file a formal grievance report on the
Defendant and report the discriminatory comments the Defendant made to the Plaintiff
despite whatever repercussions the Plaintiff would face from the Defendant, afterwards.

171.    When the Plaintiff called the Defendant.

172.    The Defendant sternly refused to file a formal grievance report and also
refused to document and investigates the discrimination claims the Plaintiff made about
the Defendant.

173.    In a final attempt for the Plaintiff to save his life, the Plaintiff called 911 to
report the incident involving the suspect on October 14, 2016 and also to report BB&T.

174. **WHEREFORE**, the Plaintiff prays that a Judgement be entered against the Defendant in excess of $350,000.

175.

**176.** COUNT-3- VIOLATION OF PUBLIC POLICY

**177.** The Plaintiff brings forth the following allegations of Violation of Public Policy and Wrongful Termination against the Defendant for the Plaintiff exercising of legal rights or privileges such as filing a civil complaint against the Defendant and whistleblowing against the Defendant.

**178.** On October 14th the Plaintiff had his life threatened by the suspect who attempted to cash a fraudulent check at the Capitol Hill branch, in Washington, DC 20003.

**179.** After and during the ordeal the Plaintiff followed all the procedures and reported the instance to the Defendant immediately as stated in the EXCELLENCE Associate Handbook for Workplace Violence [pg.15-16] *requires associates to ensure that they maintain a safe workplace free from hostile behavior, in which all associates are treated with dignity and respect. The commitment is consistent with BB&T Corporate values and mission. Associates must maintain a safe and productive work environment that is free from hostile behavior pg15.*

**180.** *By reporting the problem directly to his/her manager, the local Corporate Security Professional, the local Corporate Investigator or the Regional Relations Manager pg16.*

**181.** The Defendant owed the duty as stated in EXCELLENCE Associate Handbook for Workplace Violence [pg.16paragraph 5] *in extreme cases, where the individual refuses to cease his/her behavior and/or leave the premises, the manager contacts on-site security staff or the local law enforcement group, and Regional Associates Manager pg16.*

**182.** The Plaintiff complied with the policies and procedures to its entirety and immediately reported the incident to the Defendant with good faith that the Defendant would uphold the values and follow the policies and guidelines set forth by the EXCELLENCE Associate Handbook.

**183.** However, the Defendant did not uphold the values and follow the policies and procedures set forth. Instead the Defendant used threats and intimidation against the Plaintiff in order to deter the Plaintiff from reporting the incident. The

**184.** Defendant purposely used discriminatory threats based on protected status of sex, national origin and intimidation to scare and deter the Plaintiff away reporting the incident to any BB&T authorities including the Police because the Defendant did not want to be exposed for not following protocol and committing blatant negligence pertaining to the Plaintiffs incident involving the suspect and also be exposed for the Defendants conspiring against the Plaintiff.

**185.** This left the Plaintiff with no other option other than to exercise the Plaintiffs legal rights and privileges by calling 911 to report the crime committed by the suspect threating to end the Plaintiffs life and also trying to cash a stolen fraudulent check.

**186.** In addition to the Defendant conspiring against the Plaintiff.

**187.** The Plaintiff also contacted OSHA to report the Defendants negligence pertaining to purposely not adequately addressing the hostile and violent workplace incident and ensuring that the safety of the Plaintiffs and other employees lives where adequately

secured and protected against any future harm from the suspect while being at work in accordance with EXCELLENCE Associates Handbook.

**188.** The Plaintiff also contacted the EEOC to bring claims against the Defendant for using severe discrimination against the Plaintiff.

**189.** The Plaintiff contacted Human Resources to report the discrimination claims against the Defendant, negligence against the Defendant and conspiracy against the Defendant.

**190.** The Plaintiff called 911 to report the suspects threats and also bring allegations against the Defendant for conspiracy.

**191.** The Defendant terminated the Plaintiff for contacting OSHA, EEOC and calling 911 in direct retaliation for exposing their negligence and unethical practices.

**192.** The Plaintiff brings forth the following allegations of Violation of Public Policy and Wrongful Termination against the Defendant for the Plaintiff whistleblowing and refusing to violate the law.

**193.** After the Plaintiff realized that the Defendant was not going to take any actions to protect the lives of the Plaintiff and other employees at the Capitol Hill branch. The Plaintiff decided to report the Defendant by filing a civil complaint with OSHA, EEOC and 911. The Plaintiff exposed the Defendant for the negligence and unethical practices exhibited by the Defendant.

**194.** The Plaintiff resulted to whistleblowing to Human Resources, OSHA and EEOC as a last resort when all other options were denied and the Plaintiff was threatened by the Defendant not to report the ordeal and given an ultimatum of being terminated if the Plaintiff did.

**195.** The Plaintiff reported the unsafe work environment and reported to the Human Resources department the unethical discriminatory comments and intentional negligence.

**196.** The Plaintiff also refused to violate the law by not following the Defendants order of not reporting the crime committed by the suspect that threatened to end the Plaintiffs life and attempted to cash a stolen fraudulent check.

**197.** The Plaintiff also refused to violate the law by not following the Defendants orders of not reporting the unsafe work environment the Defendant created by not following the policies and procedures as stated in the EXCELLENCE Associate Handbook

**198.** In addition, the Plaintiff felt compelled to not participate in breaking the law by not reporting the Defendant conspiring against him and putting the Plaintiff and other employees lives at risk.

**199.** As a result of the Plaintiff exercising his rights not to violate the law and speak out against unethical practices and the Plaintiff was terminated.

**200.**

**201.** **WHEREFORE**, the Plaintiff prays that a Judgement be entered against the Defendant in excess of $[redacted] 1500,000

**202.**

**203.** COUNT-4-RETALIATION

**204.** Once the Plaintiff took action to report the unsafe work environment, discriminatory comments regarding sex, national origin, marital status and harassment from the Defendant to Human Resources, OSHA, EEOC and 911. The Plaintiff opposed the discrimination against the Defendant pertaining to why the Plaintiff did not get a

promotion based on the Plaintiffs sex, why the Plaintiff is not married constituting to why the Plaintiff is not fit to get a promotion that requires listening to women and taking orders from women in the position and why the Plaintiff could not leave work after the suspect threatened to end his life due to the fact of his sex, national origin and physical appearance. The Plaintiff also opposed the harassment and intimidation from the Defendant pertaining to deterring the Plaintiff from reporting the facetious actions of the suspect, negligence on part of the Defendant and conspiracy displayed by the Defendant that constituted to an unsafe work environment and put the Plaintiffs life and employees lives endangered intentionally.

**205.** In response to the Plaintiff reporting to the EEOC, OSHA, Human Resources and calling 911 the Plaintiff was terminated as the Defendant promised they would do if the Plaintiff reported.

**206.** This was done in direct response and retaliation for the Plaintiff reporting to the authorities the illegal and unethical behaviors the Defendant committed to the Plaintiff. **WHEREFORE**, the Plaintiff prays that a Judgement be entered against the Defendant in excess of $500,000

**207.**

**208.** COUNT-5-PAIN AND SUFFERING

**209.** The Plaintiff suffered enumerable damages resulting from the incident involving the Defendant. Plaintiff suffered from present and long-term mental turmoil, physical distress, future psychological issues and severe financial burdens encompassed by the Defendant. The Plaintiff has documentation to attest to the damages and can provide proof upon request and evidence along with testimony from psychologist, witnesses with proof of medical records.

**210.** **WHEREFORE**, the Plaintiff prays that a Judgement be entered against the Defendant in excess of $[illegible] 1,700,000

OLD VERSION ~~Do not use~~ Do not use

COUNT 1

## VIOLATIONS OF PUBLIC POLICY & WRONGFUL TERMINATION

Plantiff sues BB&T for several violations of Public Policy while Plantiff was acting in "protective activity", in accordance to BB&T 2016 Policies & Procedures Handbook for Disputes Resolution Policy (pg 51-52, Policies & Procedures). Including BB&T 2016 Policies & Procedures Handbook for Reporting Incidencies of Harassment and Discrimination and Investigations (pg 7, Policies & Procedures), Commitment to a Productive Work Environment (pg 7, Policies & Procedures), BB&T Code of Ethics for Associates (Pg 7, Policies & Procedures), Work Place Violence (pg 15-16, Policies & Procedures).

(2) Plantiff acted within his protected rights by exercising his constitutional or statutory right or privlege by reporting to his manager first on October 14th 2016 that he wanted to follow the proper channels of reporting the incident that happened inaccordance to BB&T Policy and also contact Human Resources to file a greivence report agdinst the handling of the situation of his manager Keeya Briscoe for her negligence and carelessness. Also, to report instances of discrimination. As stated in BB&T 2016 Policy and Procedure handbook, Plantiff also wanted to call 911 for fear of his life and safety at work due to the severity & nature of ~~threat~~ them from the individual. Plantiff's manager Keeya Briscoe denied him from following company protocal and procedures and would not allow him to call Police for fear of exposing her negligence and lack of competency and following company procedures.

CLAIM AMOUNT

$ 500,000.00

(3) Terminations for refusing to engage in conduct that is unlawful. Plantiff was told to not report anything to HR or follow BB&T Corporate Policy and Procedures and if I didn't obey she would fire me and call it insubordination. Manager Keeya Briscoe also told me not to call the Police because this would open her and BB&T up for exposure and cause an investigation on October 14th 2016 at 12:15pm. Completely violating BB&T 2016 Policies & Procedures WorkPlace Violence (pg 15-16, Policies & Procedures).

(4) Termination for reporting alleged unlawful conduct by the employer. Plantiff called 911, on October 17th at 4:15pm to report the incident that happened on Friday October 14th, 2016 at 11:15am. Reported to the responding officer Di Bartillo that manager would not let me call 911 and gave details pertaining to the individual that said "he was going to wait for me to get off work and follow me home and kill me".

COUNT 2

NEGLIGENCE

Plaintiff sues BB&T for Negligence for Failure to exercise an expected degree of care, leading to Plaintiffs psychological, emotions and physical injuries.

(1) Duty – BB&T owed Plantiff a duty to provide a safe workplace and policies that are conducive to such as express in BB&T 2016 Policies & Procedures for Managers Commitment (pg. 21), Personal Responsibility (pg 11), Workplace Violence (pg 15-16)

(2) Breach of Duty – BB&T failed to act contrary to the Plaintiff by not following the Policies & Procedures for Work Place Violence (pg. 15-16), nor properly addressing and documenting the Plaintiff concerns when he asked to call 911 and HR to report such matters. BB&T not having a security guard on staff or managers to properly handle the hostile situation accordingly considering the violent nature of the crime and the notorious reputation of the branch location in SE, D.C, which is known and prone to violence. Oct 14, 2016

(3) Cause in Fact – BB&T's breach of duty in fact resulted in the Plaintiff's injuries emotionally, physically and psychologically by him unjustly losing his job. Plaintiff developed sleep apnea from trauma and distress and agony from whole ordeal from incident to termination. Psychological illness from stress and ill treatment and abandonment and torture. Constant panic attacks and worry for fear of being attacked by the perpetrator. Financial burdens caused from loss of employment including homelessness and court proceeding for late rent and account freezing. Isolation from family and friends.

(4) Proximate cause - BB&T ~~breach of duty in fact~~ actions or inactions were within scope of known risks. BB&T should have known that by not following the proper procedures and protocols would result in adverse actions and could negatively impact the Plaintiff emotionally, financially, physically and psychology. BB&T lack of due dillegence pertaining to the incident could have caused great harm to the Plaintiff and other associates and opened the company up to great liability risks. In addition, by not documenting his grievence and reports with Human Resources is a direct violation of Policy and Procedure as stated in BB&T 2016 Handbook.

(5) Damages - The Plaintiff in fact suffered injuries from emotional distress, psychological turmoil, physical health conditions and serious financial burdens in direct result of the ill handling of the incident up and until termination.

CLAIM AMOUNT

$ ~~350,000~~ 500,000

Count 3

Discrimination of SEX, RACE, NATIONAL ORIGIN AND RETALIATION

Plaintiff was discriminated against by manager when he asked if he could call HR, 911 and leave early because he did not feel safe at work after his life was threatened. The manager denied his request to do so solely based on the fact that he was a "tall, black african Nigerian man" and that he needed to tuff it out and not be scared because all the other employees were scared and they are females and he is the only male therefore he must stay at work on October 14, 2016. Plaintiff then asked repeatedly if he could file a complaint and call HR but manager refused. Plaintiff was so confused and frustrated by her response that he requested Wakeitia Ferguson to sit in on the meeting to hear her reasons. Plaintiff had to have a witness to Keoya Briscoe denying him his rights as stated in BB&T 2016 Policies & Procedures. October ~~15th~~ 14th, 2016. Retaliation for firing Plaintiff on Nov 22, 2016 for calling 911 and calling HR to report manager

CLAIM AMOUNT

$ ~~250~~,000
500

Count 4

## Hostile Work Environment

Plaintiff endured offensive conduct that became a condition of employment. Conduct was so severe and perverisive that it created an enviroment that was clearly intimidating, hostile and abusive. Creating an enviroment that was difficult and uncomfortable for Plaintiff to work.

(1) The Plaintiff belonged to a statutorily protected class for male nigerian men. Manager made several comments pertaining to Plaintiffs national origin on Oct. 14th 2016 when he asked if he could go home after the incident Manager made threats to him on Oct 12th, 2016 during a meeting saying " Whatever happens to you is going to happen to you". She Made the comment in front of Wakeltia Ferguson who Plaintiff brought in the meeting due to the inappropriate comments made by Keeya Briscoe prior to bring Wakeltia in the meeting earlier that day. Oct. 12th 10:00 am. Manager threatened Plaintiff that if he calls 911 she will fire him and also that he cannot report her or file a formal grievence or she will write him up for insubordination. This clearly violates BB&T Policies and Procedures.

CLAIM AMOUNT

$ 500,000

Count 5

PAIN AND SUFFERING

- Mental turmoil
- Physical - disorders
- Psychological - disorders
- Financial - loss of wages, future wages

Claim Amount

$ 500,000