UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OLUWAROTIMI ODUTOLA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BRANCH BANKING AND TRUST ) <br> COMPANY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 18-cv-00094-RCL |

## MEMORANDUM OPINION

Now before the Court are plaintiff's Motion to Remand to State Court [ECF No. 7] and defendant's Motion to Dismiss [ECF No. 13]. Upon consideration, plaintiff's Motion to Remand to State Court is **DENIED**. Furthermore, defendant's Motion to Dismiss is **GRANTED**. Counts I and III of plaintiff's complaint are **DISMISSED WITH PREJUDICE**. Counts II and IV of the complaint are **DISMISSED WITHOUT PREJUDICE**.

**I.    Background[1]**

Plaintiff, Oluwarotimi Odutola, worked for defendant, Branch Banking and Trust Company, as a personal banker from October 17, 2015 to November 22, 2016. Am. Compl. ¶ 6. In October of 2016, plaintiff had several incidents at work. *See id.* ¶¶ 9-94.

First, plaintiff became concerned when his superiors attempted to convince plaintiff to violate defendant's corporate policy by leaving a branch of the bank with only one teller working. *Id.* ¶¶ 9-12. Plaintiff attempted to raise his concerns in a meeting with his manager the next day.

---

[1] The recited facts are taken from the plaintiffs' complaint, which for the purpose of the motion to dismiss, the court accepts as true.

1

*Id.* ¶ 13. But the manager reprimanded plaintiff for not doing as he was told and used discriminatory language in the process. *Id.* ¶ 13-15.

Just a few days later, plaintiff had an altercation with a customer. *Id.* ¶¶ 27-46. The customer came into the bank and approached plaintiff's window at the teller counter, trying to cash a suspicious check. *Id.* ¶¶ 24-25. When plaintiff told the customer that he needed to provide verification, the customer became enraged at plaintiff. *Id.* ¶¶ 25-32. Plaintiff asked the customer to leave the premises, further angering the customer and causing him to make serious threats to plaintiff's life. *Id.* ¶¶ 33-35. Plaintiff came around the teller line window to try to alert the branch manager, but the customer blocked his path. *Id.* ¶¶ 36-41. A coworker tried to deescalate the situation, grabbing the customer's check and ID in order to notify the authorities. *Id.* ¶¶ 42-43. Finally, the branch manager came out of her office; she returned the check and ID to the customer, who left the store. *Id.* ¶¶ 44-46.

Plaintiff was incredibly disturbed by the whole incident and the fact that the branch manager never intervened or even reported the customer. *Id.* ¶¶ 47-50. In a meeting with the branch manager, he told the manager that he planned to report both the incident with the customer and the discriminatory language from the earlier meeting to the Equal Employment Opportunity Commission ("EEOC") and the Occupational Safety and Health Administration ("OSHA"). *Id.* ¶ 55. Additionally, he wished to file a grievance report with defendant's human resources department. *Id.* ¶ 57. The branch manager responded by making discriminatory remarks to plaintiff and threatening to terminate his employment if he reported the incident. *Id.* ¶¶ 55-60.

Plaintiff eventually called the police to report the altercation with the customer. *Id.* ¶¶ 77-85. Immediately after an officer came to question the branch manager, plaintiff was placed on

administrative leave. *Id.* ¶ 86. On October 19, 2016, he filed a claim with the EEOC. And on November 22, 2016, the plaintiff's employment with the defendant was terminated. *Id.* ¶ 94.

On October 27, 2017, plaintiff filed the instant lawsuit in D.C. Superior Court. On December 22, 2017, plaintiff amended his complaint seeking $4.3 million in damages and listing four counts: (1) negligence; (2) hostile work environment; (3) violation of public policy; and (4) retaliation. Am. Compl. ¶¶ 95-209. Plaintiff is proceeding *pro se*.

## II. Plaintiff's Motion to Remand to State Court is Denied

Plaintiff originally filed this suit in D.C. Superior Court. On January 16, 2018, defendant filed a notice of removal, removing the case to this Court. Plaintiff now moves to remand the case to Superior Court. For the reasons set forth below, plaintiff's motion is denied.

### A. Legal Standard

Civil actions filed in state court may be removed to a United States district court by the defendant so long as the case could have originally been filed in federal court. 28 U.S.C. § 1441(a) (2012). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id.* § 1447(c). A challenge to subject matter jurisdiction may be raised on a motion to remand by the parties. *Id.* A "party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court." *Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the W.*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005) (citation omitted).

### B. The Present Case is Properly Removable

Plaintiff appears to challenge whether the case is properly removable and whether the defendant followed proper procedures in removing the case.

3

First, the plaintiff challenges diversity jurisdiction. Pl.'s Mot. to Remand ¶¶ 1-2. Federal district courts have original diversity jurisdiction over civil actions in which (a) the amount in controversy exceeds $75,000, and (b) all adverse parties are citizens of different states. 28 U.S.C. § 1332(a). Plaintiff claims that both defendant and himself are citizens of the District of Columbia and, thus, not diverse. Pl.'s Mot. to Remand ¶¶ 1-2. Specifically, plaintiff points to the fact that defendant has "multiple branches and conducts business and all bank functions in the District of Columbia." *Id.* at ¶ 1. However, this is not the test.

A corporation is a citizen of both (a) the state of its incorporation, and (b) the state in which it maintains its principal place of business. 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is its "nerve center". Ordinarily, this is the place from which its officers and directors supervise and direct the corporation's operations, or the corporation's headquarters. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S.Ct. 77, 175 L.Ed.2d 1029 (2010). Here, defendant is a citizen of North Carolina. That is where the bank is incorporated, where it maintains its headquarters, and where its officers and executives supervise and direct the bank's operations. *Branch Banking and Trust Company*, North Carolina Secretary of State, https://www.sosnc.gov/online_services/search/Business_Registration_Results (stating that defendant has been incorporated in North Carolina since 1974 and maintains its principal office in Winston-Salem, North Carolina); *see also Corporate Information*, BB&T, https://bbt.investorroom.com/corporate-information (stating that defendant's headquarters are in North Carolina). Because plaintiff is a citizen of the District of Columbia and defendant is a citizen of North Carolina, the parties are diverse. The case is properly removable.

Second, plaintiff claims defendant did not follow the proper procedures for removal.[2] In order to properly remove a case, a defendant must file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" 28 U.S.C. § 1446(b)(1).

Here, according to the D.C. Superior Court docket, the plaintiff filed his initial complaint on October 27, 2017. Odutola v. BB&T, No. 2017-CA-007250 (D.C. Superior Court), docket available at https://eaccess.dccourts.gov/eaccess/home.page.9. A summons was issued, but no proof of service was returned. *Id.* Plaintiff then filed an amended complaint on December 22, 2018. *Id.* Defendant claims that this was the first notice of the lawsuit that it received. *See* Def. Notice of Removal ¶ 1. And without any proof of service, the Court has no reason to suspect otherwise. Defendant then filed a notice of removal less than 30 days later on January 16, 2018. The notice of removal included a certificate of service. The Court finds the defendant followed the proper procedure.

Because the case is removable and because defendant followed proper procedure under 28 U.S.C. § 1446, plaintiff's motion to remand is denied.

## III. Defendant's Motion to Dismiss

The defendant moves, pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. In plaintiff's complaint, he asserts four causes of action: (1) negligence; (2) hostile work environment; (3) violation of public policy; and (4) retaliation. Am. Compl. ¶¶ 95-209. Defendant believes all of these claims must be dismissed. For the reasons set forth below, the claims for

---

[2] Plaintiff's argument relating to the procedure of removal is quite unclear. But because plaintiff is proceeding *pro se*, the Court constructs his pleadings liberally and will examine the removal procedure.

negligence and violation of public policy are dismissed with prejudice, while the claims for hostile work environment and retaliation are dismissed without prejudice.

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). When considering a motion to dismiss under Rule 12(b)(6), "the court must assume 'all the allegations in the complaint are true (even if doubtful in fact),' and the court must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged.'" *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (internal citations omitted).

A plaintiff proceeding *pro se* is held to a "less stringent" standard than a lawyer, and the court must construe his claims liberally. *Erickson v. Pardus*, 551 U.S. 89, 94, 127, S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, a *pro se* plaintiff is not exempt from Rule 12(b)(6) requirements. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009).

### B. Plaintiff's Negligence Claim is Barred by the D.C. Workers' Compensation Act

In Count 1 of plaintiff's complaint, he claims that defendant acted negligently in connection with an October 14, 2016 altercation with a customer causing defendant injury. Am. Compl. ¶¶ 95-150. Specifically, he alleges that defendant failed to follow its own internal procedures for reporting the altercation, failed to alert proper authorities about the altercation, and failed to take precautions to protect him from future harm by the customer. Am. Compl. ¶¶ 104-108, 148. He claims the defendant breached a duty to provide him with a safe workplace, causing him emotional and psychiatric injury. *Id.* ¶¶ 101, 122-25, 132, 136, 138, 141-46.

6

The District of Columbia's Workers' Compensation Act ("WCA") precludes such a claim. The WCA applies, in relevant part, to "injury . . . of an employee that occurs in the District of Columbia if the employee performed work for the employer, at the time of the injury or death, while in the District of Columbia[.]" D.C. CODE § 32-1504(b). "The types of injuries covered by the WCA are broadly defined to encompass 'accidental injury or death arising out of and in the course of employment . . . and includes an injury caused by the willful act of third persons directed against an employee because of his employment.'" *Lockhart v. Coastal Int'l Sec., Inc.*, 905 F. Supp. 2d 105, 116 (D.D.C. 2012) (quoting D.C. CODE § 32-1501(12)). This includes claims for emotional distress or mental anguish where the underlying cause or tort is covered by the WCA. *Vanzant v. Washington Metro. Area Transit Auth.*, 557 F. Supp. 2d 113, 117 (D.D.C. 2008). And for these D.C. workplace injuries, the compensation provided under the law "constitute[s] the employee's exclusive remedy against the employer[.]" D.C. CODE § 32-1504(b). This "exclusivity of remedy to employees is a fundamental part of the bargain reflected in workers' compensation laws[.]" *Lockhart*, 905 F. Supp. 2d at 16.

Plaintiff does not dispute that he was an employee of defendant and that he was at work when the altercation on October 14, 2016 took place. Injuries resulting from an employee's altercation with a customer while the employee is working fall under the WCA. And so, defendant is "immune from" plaintiff's "tort action[] . . . for personal injuries arising out of and in the course of [his] employment, whether or not [he] exercise[d] [his] right to obtain workers' compensation benefits." *Id.* (citing *Georgetown Univ. v. D.C. Dep't of Emp't Servs.*, 830 A.2d 865, 868, n.1 (D.C. 2012)). Plaintiff's negligence claim is dismissed with prejudice.

### C. Plaintiff's Title VII Hostile Work Environment and Retaliation Claims Appear to be Time-Barred; Plaintiff may make a Motion for Leave to Amend his Complaint

Counts 2 and 4 of the complaint allege that (a) plaintiff was subjected to a hostile working environment based on his race, sex, nation origin, and color; and (b) he was retaliated against for filing an internal grievance and contacting the EEOC. These are both Title VII claims.

Under Title VII, a plaintiff must file a civil action within 90 days of receiving notice from the EEOC of a right to sue. *See* 42 U.S.C. § 2000e–5(f)(1). The 90-day time limit is not jurisdictional; rather it functions like a statute of limitations and may be raised in a pre-answer dispositive motion. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 577-79 (D.C. Cir. 1998). Courts strictly construe the 90-day deadline and will dismiss suits filed even one day late. *See, e.g., Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007); *Summers v. Howard Univ. Hosp.*, 300 F. Supp. 3d 268, 270 (D.D.C. 2018).

In the plaintiff's complaint, he states that he called the EEOC on October 19, 2016 and filed a claim for discrimination and retaliation. He mentions no other communication with the EEOC in the complaint. The EEOC issued a right-to-sue letter five days later on October 24, 2016 (the "October 2016 Letter"). *See* Def.'s Mot. to Dismiss Ex. B. But the plaintiff did not file suit until over a year later on October 27, 2017. This is well outside of the statutory 90-day deadline.

But the plaintiff claims in his response to defendant's motion that this was an error by the EEOC and that EEOC issued a "corrected" right-to-sue letter on August 24, 2017 (the "August 2017 Letter"). Plaintiff attaches "proof" of this in his Amended Motion for Leave for Plaintiff to File a Sur-reply to Defendant's Motion to Dismiss [ECF No. 17]. He attaches an email from Monica Colunga, a WFO Enforcement Supervisor at the EEOC, which states:

> On October 20, 2016, you filed a charge of discrimination (EEOC Charge No. 570-2017-00130). That charge included allegations of retaliation and sex/male discrimination. Because the initial charge failed to include additional allegations a second charge (EEOC Charge Number 570-2017-013640) was filed on August 18, 2017. That charge included [sic] of sex/male, national origin, race/Black African American, retaliation and color allegations.

8

Am. Mot. for Leave for Pl. to File a Sur-Reply to Def.'s Mot. to Dismiss at Ex. 1. Because of the August 2017 Letter, plaintiff claims he is within the 90-day time limit and can permissibly bring these claims before the Court.

Defendant disagrees. First, defendant argues that there is not sufficient proof that the EEOC *reconsidered* its original position. Plaintiff has not provided the Court with a Notice of Reconsideration. And the second charge has a different charge number altogether. Second, defendant argues that even if the EEOC reconsidered its original decision, it did not withdraw the letter and plaintiff's suit is, therefore, still untimely. *See* 29 C.F.R. § 1601.21(b)(1). "If the EEOC issues a notice of its intent to reconsider within 90 days after a right to sue letter is issued, and 'the charging party has not filed suit . . . the notice of intent to reconsider will vacate the dismissal or letter of determination and revoke the notice of right to sue.'" *Obaseki v. Fannie Mae*, 840 F. Supp. 2d 341, 344-45 (D.D.C. 2012) (quoting 29 C.F.R. § 1601.21(b)(1)). But if "the EEOC did not move to reconsider until after the initial time frame for Plaintiff to file suit, the EEOC's reconsideration did not revive the ninety day limit, and Plaintiff's suit is untimely." *Id.* at 345.

Defendant's position is correct and requires dismissal to the extent plaintiff seeks to sue for the allegations of retaliation and sex discrimination from the October 2016 charge. But as defendant points out, the August 2017 Letter has an entirely different charge number. And as Ms. Colunga states in her email, it includes additional allegations. Reading the plaintiff's *pro se* complaint most liberally, plaintiff may have been attempting to sue based on both charges. However, the complaint itself does not make any such distinction. And the complaint fails to mention the August 2017 Letter entirely. But if it had distinguished between the two letters, some of the allegations related to the August 2017 charge may be timely. The Court, therefore, believes that justice and equity favor giving the *pro se* plaintiff a second chance at stating a claim.

The Court dismisses the hostile work environment and retaliation claims without prejudice. Within thirty (30) days, the plaintiff may make a motion for leave to amend the complaint. If the plaintiff chooses to take this route, the Court directs him to include only those allegations in his complaint from the August 2017 charge and none of the allegations from the October 2016. The Court also notes that if the August 2017 charge was simply a second charge filed *by the plaintiff* based on the same conduct by defendant, it may be untimely. Title VII requires a complainant to file charges with the EEOC within 180 days after the occurrence of the alleged discrimination, or within 300 days of such occurrence if the complainant has initially instituted state proceedings. 42 U.S.C. § 2000e-5(e)(1). The August 18, 2017 charge was filed over 300 days after the alleged discrimination in October 2016. In short, if the plaintiff decides to move for leave to amend, he should provide as many details as possible related to the substance of the August 2017 charge and its distinctions from the October 2016 charge. Plaintiff should also include allegations related to his communication with EEOC in association therewith so that the Court may properly determine whether the second charge is, itself, timely.

**D. Plaintiff's Wrongful Termination Claim**

In Count III of the complaint, plaintiff alleges that the defendant terminated him in violation of public policy. Specifically, plaintiff claims "[d]efendant terminated the [p]laintiff for contacting OSHA, EEOC and calling 911 in direct retaliation for exposing their negligence and unethical practices." Am. Compl. ¶ 191.

Employment in the District of Columbia is, by default, at will. *Carl v. Children's Hosp.*, 702 A.2d 159, 162 (D.C. 1997). But the D.C. Court of Appeals has recognized an exception for wrongful terminations in violation of a "clear mandate of public policy." *Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 96 (D.D.C. 2011) (quoting *Riggs v. Home Builders Inst.*, 203 F.

Supp. 2d 1, 21 (D.D.C. 2002). This is a narrow exception. *Rosella v. Long Rap, Inc.*, 121 A.3d 775, 778 (D.C. 2015). "Not only must a plaintiff plead a 'clear mandate of public policy,' but this public policy must be one that is not already protected by another statute." *Jones v. District of Columbia Water & Sewer Auth.*, 943 F. Supp. 2d 90, 94 (D.D.C. 2013).

Here, plaintiff fails to identify a clear mandate of public policy that does not already provide a statutory enforcement scheme. The plaintiff mentions both Title VII and OSHA as potential sources of public policy. But neither of these can support a wrongful termination suit because both of those statutes provide their own enforcement mechanisms. *See* 42 U.S.C. § 2000e-5(f)-(e) (Title VII); 29 U.S.C. § 660(c) (OSHA). Plaintiff may not "eschew [these statutes'] administrative remed[ies] and instead obtain recovery against the employer on a tort theory of wrongful discharge under the narrow 'public policy' exception to the employment-at-will doctrine." *See Nolting v. Nat'l Capital Group, Inc.*, 621 A.2d 1387, 1390 (D.C. 1993).

The only other source of policy plaintiff appears to rely on in his complaint is the corporate policies listed in defendant's employee handbook. Am. Compl. ¶¶ 179-82, 197. But plaintiff does not explain to the Court how defendant's *corporate* policy could be considered a clear mandate of *public policy*. The D.C. Court of Appeals has been reluctant to expand the exception to cover "'nebulous' concepts of public policy." *See Rosella*, 121 A.3d at 778. So too is this Court. Plaintiff fails to state a claim for wrongful termination in violation of public policy.

### III. Conclusion

For the reasons stated herein, plaintiff's Motion to Remand [ECF No. 7] is **DENIED**. Additionally, defendant's motion to dismiss [ECF No. 13] is **GRANTED**. Plaintiff's claims for negligence and wrongful termination are **DISMISSED WITH PREJUDICE**. Plaintiff's Title VII claims for hostile work environment and retaliation are **DISMISSED WITHOUT**

**PREJUDICE.** Within thirty (30) days, the plaintiff may make a motion for leave to amend the complaint to include only those allegations related to the October 2017 EEOC charge. In coming to its decision, the Court considered plaintiff's sur-reply. As such, plaintiff's Amended Motion for Leave to File a Sur-reply [ECF No. 17] is **GRANTED**. Plaintiff's Motion for Leave to File a Sur-reply [ECF No. 16] is **DENIED AS MOOT**. An order consistent with this holding accompanies this opinion.

DATE: 8/7/18

Royce C. Lamberth
United States District Judge